## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SYLVIA TRAFFICANTE,         :
         *Plaintiff*      :           **CIVIL ACTION**
                                 :

         **v.**                :
                                 :

HOMEGOODS, INC. *et al,*      :           **No. 20-5382**
         *Defendants*     :

## M E M O R A N D U M

PRATTER, J.                                        FEBRUARY *15* , 2023

       Sylvia Trafficante brought negligence and design defect claims against Richards Homewares, Inc. for injuries she suffered while installing a shower organizer designed by the company. Ms. Trafficante and Richards Homewares both filed Rule 702 motions seeking to exclude the expert opinions and testimony of the other party's experts. Richards Homewares also filed a motion for summary judgment. For the reasons that follow, the Court denies Ms. Trafficante's Rule 702 motion, Richards Homewares' Rule 702 motion, and Richards Homewares' motion for summary judgment.

### BACKGROUND

       Richards Homewares, Inc. designed a shower organizer that uses a spring compression tension rod in its design. Sylvia Trafficante purchased one of the shower organizers from a HomeGoods store. Ms. Trafficante assembled and installed the spring tension rod for the shower organizer in her bathroom on her own. She alleges that she followed word-for-word the instructions provided with the product. Per the instructions, Ms. Trafficante measured the height from her tub to the ceiling, which was 70.5 inches. The instructions identified the component parts necessary for installation based on that height. Ms. Trafficante claims that she laid out those parts on her bathroom floor and assembled the tension rod.

Once the tension rod was assembled, Ms. Trafficante placed the product into the corner of her tub-shower combination, between the flat lip (the rim) of the tub and the ceiling. She placed the bottom of the rod on the lip of her tub and pushed against the spring resistance to move the rod into place. According to Ms. Trafficante, the tension was cumbersome, but she believed that she had achieved a proper installation. Once the rod was in place, Ms. Trafficante stepped out of her tub to grab the shelves and soap tray to finish installing the components of the shower organizer that would hold items. When she twisted around to reenter the tub, one of the tension rod's component parts sprang out at her and struck her left eye, injuring her. After Ms. Trafficante was struck in the eye, the component parts were strewn across her bathroom floor, some still connected, and others separated.

Ms. Trafficante filed a complaint in the Philadelphia County Court of Common Pleas against Richards Homewares.[1] Ms. Trafficante's complaint alleges three counts: negligence (Count I); strict liability – design defect and failure to warn (Count II); and breach of warranty (Count III). Richards Homewares removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Both Ms. Trafficante and Richards Homewares retained experts to provide opinions on the engineering and design of the shower organizer and to opine as to the human factors issues in Ms. Trafficante's case. Ms. Trafficante retained Dr. Matthew Wagenhofer and Dr. Jason S. Kiddy, both engineering experts. Richards Homewares retained Dr. MariAnne Sullivan Davis, an engineering expert, and Dr. Joseph B. Sala, a human factors expert. Ms. Trafficante and Richards Homewares have each filed a Rule 702 motion to exclude the other party's experts.[2] Richards Homewares also

---

[1]      Ms. Trafficante also named HomeGoods, Inc., HomeGoods Broomall, PA and The TJX Companies, Inc. as defendants, but they have since been dismissed from this litigation.
[2]      Ms. Trafficante seeks only to exclude the testimony of Dr. Joseph B. Sala and does not seek to exclude the expert opinions and testimony of Dr. MariAnne Sullivan Davis.

filed a motion for summary judgment, arguing that it is entitled to judgment as a matter of law because, assuming the Court will grant its Rule 702 motion, Ms. Trafficante will have failed to establish causation by way of expert testimony.

## I.   Dr. Matthew Wagenhofer's Expert Report (Plaintiff's Expert)

In preparing his expert report, Dr. Matthew Wagenhofer examined the actual shower organizer at issue, an exemplar (the same product made by Richards Homewares), and a similar product designed by a competitor. Dr. Wagenhofer conducted a spring rate analysis and loss-of-tension testing on the exemplar and similar products. The spring testing analysis "was performed to measure the spring rates (force versus deflection) for the tension pole spring which allows for the determination of the precise forces and stored energy that were produced by the product during normal use and installation in [Ms. Trafficante's] bathroom." Pl.'s Opp. to R. 702 Mot. at 16. The loss-of-tension testing "was performed to simulate what would happen to the tension pole in the event of a loss of tension, regardless of the reason for the loss." *Id.* Dr. Wagenhofer created a horizontal test frame in which he conducted both tests. From the spring rate analysis testing, Dr. Wagenhofer concluded that there are 103.2 pounds of stored energy in the rod when it is assembled and installed per the instructions for Ms. Trafficante's desired height of 70.5 inches. From the loss-of-tension testing, Dr. Wagenhofer concluded that a release of tension (resulting from the application of external force) resulted in ejection of a tube from the rod at a velocity of up to 22 miles per hour.

Dr. Wagenhofer opined that: (1) "the design of the subject shower organizer allows users to install the [rod] such that [the] spring remains compressed to its solid length"; (2) the instructions for the subject shower organizer do not include information about potential hazards; (3) the stored energy in the rod creates a hazard; and (4) "Richards [Homewares] took no actions to recognize, characterize, or control the stored energy hazard." Wagenhofer Report at 6.

3

## II.   Dr. Jason S. Kiddy's Expert Report (Plaintiff's Expert)

Dr. Jason S. Kiddy—the second of Ms. Trafficante's experts—also examined the subject shower organizer, an exemplar product, and a similar product designed by a competitor. Dr. Kiddy performed spring rate testing, loss-of-tension testing, and demonstrative testing of the exemplar and a similar competitor's product. Like Dr. Wagenhofer, Dr. Kiddy tested the rods in a horizontal test frame. During the loss-of-tension testing, Dr. Kiddy applied external force to the rod by rotating the support block until the rod slid off the block. This application of force caused the rod to lose tension. Dr. Kiddy used the results from this testing as the basis for his conclusions, including that there was a stored energy hazard associated with the rod.

Dr. Kiddy also evaluated Richards Homewares' alleged lack of hazard analysis for the subject shower organizer. Dr. Kiddy included an example design failure mode and effect analysis (DFMEA) for a shower organizer that Richards Homewares could have used to analyze potential hazards associated with its shower organizer, and he discussed the application of the hierarchy of controls to the subject shower organizer. The hierarchy of controls "is a well-known and widely accepted practice to eliminate or reduce hazards posed by processes and designs. The hierarchy is promoted by numerous organizations . . . [and] creates a systematic approach to creating a safe design." Kiddy Report at 12. The hierarchy has five levels of approaches to reduce potential hazards: elimination, substitution, engineering controls, administrative controls, and personal protective equipment (PPE). Dr. Kiddy proposed various methods to address the stored energy hazard in the tension rod at each level of the hierarchy of controls.

Dr. Kiddy concluded that (1) Richards Homewares failed to identify and analyze the safety hazard presented by the stored energy in the tension rod prior to sale; (2) Richards Homewares failed to enact hazard control solutions at any level of the hierarchy of controls; and (3) the instructions for the subject shower organizer lacked warnings and fell below industry standards.

4

### III.   Dr. Joseph B. Sala's Expert Report (Defendant's Expert)

Dr. Joseph B. Sala, a psychologist, was retained by Richards Homewares to opine on human factors issues in this case, as well as on the expert reports of Dr. Wagenhofer and Dr. Kiddy. To prepare his expert report, Dr. Sala examined Ms. Trafficante's bathroom, the instructions provided with the subject shower organizer, and the component parts of the subject shower organizer as they were after their alleged malfunction. The crux of Dr. Sala's report is his human factors analysis. Dr. Sala opines that the instructions provided with the subject shower organizer were reasonable and appropriate, and when the product is "assembled according to the provided instructions, the assembled unit is stable in its connections with components firmly inserted resistant to manual separation." Sala Report at 19–20. According to Ms. Trafficante, she followed the provided instructions and completed the assembly and installation of the rod. "However, the separation of components as presented by Ms. Trafficante is inconsistent with [Dr. Sala's] observations as to the security of attachment for components . . . ." *Id.* at 20. He concludes that "the resulting component separation is inconsistent with [his] observations as to the component interactions achieved when following the instructions provided." *Id.* at 20–21. Dr. Sala opines that Ms. Trafficante must not have installed the tension rod properly because if the product were assembled according to the provided instructions, the tension rod would not "spring" like it allegedly did in Ms. Trafficante's case. *Id.* at 25.

Dr. Sala also provided a critique of both Dr. Wagenhofer's and Dr. Kiddy's reports. He concluded that "[t]he opinions of Dr. Kiddy and Dr. Wagenhofer are irrelevant, ignore case facts, and/or are speculative and misleading. The testing and methodology used to reach their opinions regarding the alleged hazard and inadequacies within the warnings and instructions do not consider the product's use environment and/or user interactions and are unreliable and not valid." *Id.*

DISCUSSION

## I.   Federal Rule of Evidence 702

Federal Rule of Evidence 702, "which governs the admissibility of expert testimony, has a

liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir.

1997). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>   (a) the expert's scientific, technical, or other specialized knowledge will help
>       the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the
>       case.

Fed. R. Evid. 702. The Third Circuit Court of Appeals has interpreted Rule 702 as setting forth

three requirements: (1) that the expert is qualified; (2) "the expert must testify about matters

requiring scientific, technical or specialized knowledge"; and (3) "the expert's testimony must

assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008); *see also In

re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–42 (3d Cir. 1994).

Under the second requirement, "an expert's testimony is admissible so long as the process

or technique the expert used in formulating the opinion is reliable"—that is, the expert used a

reliable methodology. *Paoli*, 35 F.3d at 742. An expert's opinion may be deemed reliable if it is

"based on the methods and procedures of science rather than on subjective belief or unsupported

speculation," giving the expert "good grounds" for his opinion. *Paoli*, 35 F.3d at 742 (quoting

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). District courts have "broad

discretion in determining the admissibility of evidence, and 'considerable leeway' in determining

the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 F. App'x 691,

694 (3d Cir. 2002). The test of reliability is expected to be applied with "flexibility", and district

6

courts should consider several factors in evaluating whether an expert's methodology is reliable, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on methodology; and (8) the non-judicial uses to which the method has been put.

*Pineda*, 520 F.3d at 247–48; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case."). "While no one [factor] is dispositive, some analysis of these factors is necessary." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020).

In assessing the third requirement—whether the expert's testimony will assist the trier of fact—the Court must determine the "fit" of the expert's testimony as it relates to the case at hand, meaning the Court considers "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Paoli*, 35 F.3d at 742–43 (quoting *United States v. Downing*, 753 F.3d 1124, 1237 (3d Cir. 1985)); *see also Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2021 WL 1145904, at *4 ("An expert's testimony fits the case if the testimony will 'assist the trier of fact.'") (quoting *Paoli*, 35 F.3d at 743). "[T]he requirement of reliability, or 'good grounds,' extends to each step in an expert's analysis all the way through the step that connects the work of the expert to a particular case." *Id.* at 743.

In addition to considering "fit," the Court must determine whether the expert's testimony is misleading. While Federal Rule of Evidence 403 ostensibly gives the Court more power over the admissibility of expert testimony than lay witnesses, the Third Circuit Court of Appeals has held that "for a district court to exclude scientific evidence, there must be something *particularly*

confusing about the scientific evidence at issue—something other than the general complexity of scientific evidence." *Id.* at 747. Thus, in somewhat of a negative analytical construct, the expert's testimony will "assist" the trier of fact so long as it is not "particularly confusing." *See id.*

## A.  Rule 702 Motion to Exclude Dr. Kiddy and Dr. Wagenhofer

Richards Homewares seeks to exclude Ms. Trafficante's experts, arguing that the opinions of Dr. Kiddy and Dr. Wagenhofer "rely upon false assumptions and flawed testing, contain analytical gaps, and apply arbitrary, unreliable, or wholly-absent principles and methodologies in violation of Federal Rule of Evidence 702." Def.'s Rule 702 Mot. at 7, Doc. No. 30.

First, Richards Homewares argues that Dr. Wagenhofer's and Dr. Kiddy's methodologies are unreliable because they used "flawed testing methodologies." *Id.* at 14, 17. Richards Homewares takes issue with Dr. Wagenhofer's and Dr. Kiddy's use of a horizontal test frame and their application of external force to the rod during the loss-of-tension testing. According to Richards Homewares, this testing is "flawed" because it is not representative of the conditions of Ms. Trafficante's installation of the subject shower organizer, and it "entirely ignores the actual use environment of the organizer." *Id.* at 14, 17.  Ms. Trafficante installed the rod vertically and was not applying external force when the rod "sprang" and injured her. Richard Homewares notes that despite these alleged problems, both Dr. Wagenhofer and Dr. Kiddy relied on this testing to form the conclusions and opinions expressed in their reports. Finally, Richards Homewares asserts that Dr. Wagenhofer and Dr. Kiddy fail to provide any theories as to how the subject shower organizer sprang and injured Ms. Trafficante, *i.e.,* they failed to opine on causation. Richards Homewares thus seeks to exclude Dr. Wagenhofer's and Dr. Kiddy's expert opinions because they are based on unreliable methodologies and are not reliably applied to the facts of this case.

Ms. Trafficante argues that both Dr. Kiddy and Dr. Wagenhofer have "good grounds" for their expert opinions and thus their opinions should be admitted. Ms. Trafficante also asserts that Dr. Kiddy's and Dr. Wagenhofer's opinions satisfy the "fit" test for relevance because they are helpful to the trier of fact and are not "particularly confusing." *See Paoli*, 35 F.3d at 742–743, 747. Finally, Ms. Trafficante notes that Richards Homewares did not challenge Dr. Kiddy's or Dr. Wagenhofer's qualifications to testify on the engineering aspects of the design of the subject shower organizer.

The Court concludes that Dr. Kiddy's and Dr. Wagenhofer's expert opinions and testimony are admissible. First, their qualifications to testify as to the engineering aspects of the design of the subject shower organizer are not in dispute. Second, the testing conducted by Dr. Kiddy and Dr. Wagenhofer satisfies the flexible test for reliability because their testing methodologies are "based on the methods and procedures of science rather than on subjective belief or unsupported speculation," giving the experts "good grounds" for their opinions. *Paoli*, 35 F.3d at 742. While the testing may not be representative of the circumstances of the case, that alone is not grounds for exclusion. *See Kannankeril*, 128 F.3d at 806 ("*Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology. Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined."). Richards Homewares certainly can vigorously cross examine Dr. Kiddy and Dr. Wagenhofer on this point at trial. Finally, Dr. Kiddy's and Dr. Wagenhofer's opinions can assist the trier of fact because they may prove to be helpful and are not "particularly confusing." *See Paoli*, 35 F.3d at 747.

For all of these reasons, the Court will deny Richard Homewares' Rule 702 motion and will not exclude the expert opinions or testimony of Dr. Kiddy or Dr. Wagenhofer.

**B. Rule 702 Motion to Exclude Dr. Sala**

Ms. Trafficante seeks to exclude Richards Homewares' expert Dr. Joseph B. Sala, arguing that Dr. Sala should be excluded because (1) he did not conduct spring energy testing; (2) he did not address the hierarchy of controls; (3) he critiqued Dr. Kiddy and Dr. Wagenhofer for not speculating as to what caused the product to spring and injure Ms. Trafficante; and (4) his report does not fit and is particularly confusing, so it will not assist the trier of fact.

In response, Richards Homewares first asserts that Dr. Sala's opinions are based on reliable methodologies: he examined Ms. Trafficante's bathroom where she installed the subject shower organizer, he examined the component pieces of the subject shower organizer, and he examined the instructions provided with the subject shower organizer. He also reviewed Ms. Trafficante's deposition testimony and her experts' reports. Based on this review, and using his background knowledge and experience, he reached the conclusions set forth in his report. Richards Homewares also asserts that contrary to Ms. Trafficante's arguments, Dr. Sala does address the hierarchy of controls because he relies on the hierarchy in his critique of Dr. Kiddy's conclusions. Richards Homewares claims that "Dr. Sala discredits [Ms. Trafficante's] experts because the methodologies they used were speculative and misleading," but he does not criticize them for failing to speculate about causation. Def.'s Opp. Br. at 8. With respect to relevance, Richards Homewares asserts that Dr. Sala's opinions are highly relevant because they describe how a human would interact with the instructions and the subject shower organizer in this case. Because his opinions can assist the jury in evaluating Ms. Trafficante's testimony, and in evaluating the instructions provided with the subject shower organizer, Richards Homewares argues that his opinions must be allowed.

Dr. Sala has appropriate grounds for his opinions as they relate to the human factors issues in this case because he reviewed reliable evidence and engaged in a human factors analysis based

on his expertise in psychology and human factors. *See Paoli*, 35 F.3d at 742. His opinions are relevant because they can assist the jury without adding confusion to the case. *See id.*

For all of these reasons, the Court will deny Ms. Trafficante's Rule 702 motion and will not exclude the expert opinions or testimony of Dr. Sala.

## II.    Motion for Summary Judgment

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. More than the "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is required. *Anderson*, 477 U.S. at 252. Where the Court determines that there are no genuine issues of material fact, it should grant summary judgment. *Celotex*, 477 U.S. at 322.

"In Pennsylvania, to prevail on a claim of defective design in a product liability action, a plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Martinez v. Triad Controls, Inc.*, 593 F. Supp. 2d 741, 756 (E.D. Pa. 2009); *see also Stephen v. Paris Cleaners, Inc.*, 885 A.2d 59, 65 (Pa. Super. Ct. 2005) ("[P]roof of causation is a necessary element of a plaintiff's *prima facie* case in a products liability action . . . ."). In cases "involving complex issues of causation not

readily apparent to the finder of fact, [the] plaintiff must present admissible expert testimony" to prove causation. *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 525 (W.D. Pa. 2003)).

Richards Homewares argues that expert testimony is required to establish causation in this case because it involves an "analysis of the mechanics and physics of tension rods and [their] interior spring components," thus the issue of causation is not readily apparent to the fact finder. Def.'s Mot. Summ. J. at 10, Doc. No. 31 (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)). Richards Homewares bases its motion for summary judgment wholly on the assumption that the Court will grant its Rule 702 motion to exclude Ms. Trafficante's experts. It argues that, as a result, Ms. Trafficante will have no expert testimony on causation, so Richards Homewares is entitled to judgment as a matter of law because Ms. Trafficante cannot (without experts) establish the existence of a necessary element of her claim. *See, e.g., Shannon v. Hobart*, No. 09-cv-5220, 2011 WL 442119, at *6–7 (E.D. Pa. Feb. 8, 2011).

Richards Homewares further argues that it is entitled to summary judgment as to Ms. Trafficante's related negligence and breach of warranty claims because these causes of action require proof of causation. *See Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 488 (E.D. Pa. 1997) ("To succeed on their products liability and negligence claims, plaintiffs will also have to prove 'causation.'"); *Stephens v. Paris Cleaners*, 885 A.2d 59, 65 (Pa. Super. Ct. 2005) (noting that "proof of causation is a necessary element of a plaintiff's *prima facie* case in a products liability action as well as in a negligence action"); *but see Heller*, 167 F.3d at 151 (noting that where the plaintiff alleged claims for breach of warranty, failure to warn, and defective design, proof that the defendant's products caused the plaintiff's injuries was only required to establish the defective design and failure to warn claims).

Because the Court will deny Richard Homewares' Rule 702 motion, the Court must also deny Richards Homewares' motion for summary judgment which is dependent upon the removal of Ms. Trafficante's experts from the case. Ms. Trafficante's experts will not be excluded, thus she can still establish causation by way of expert testimony. *See Hoefling*, 576 F. Supp. 3d at 270. Moreover, because there are dueling experts on the issues of engineering and design, a genuine issue of material fact exists, making this case inappropriate for resolution at the summary judgment stage.

For all of these reasons, the Court will deny Richard Homewares' motion for summary judgment.

CONCLUSION

In sum, the Court will deny Ms. Trafficante's Rule 702 motion, Richard Homewares' Rule 702 motion, and Richard Homewares' motion for summary judgment. Appropriate orders corresponding to each motion will follow.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE